UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTOR CHADEE,

               Plaintiff,

v.                                                                    Case No.: 8:17-cv-3 T-24 TBM

OCWEN LOAN SERVICING, LLC,

               Defendant.

_____/

**<u>ORDER</u>**

This cause comes before the Court on Defendant Ocwen Loan Servicing, LLC's ("Ocwen") Motion to Dismiss. Doc. 6. Plaintiff Victor Chadee opposes the motion. Doc. 7. As explained below, Counts I and II are dismissed for failure to allege a concrete injury, and Count III is dismissed as abandoned. Accordingly, for the reasons that follow, Ocwen's Motion to Dismiss is GRANTED.

**I.     Background**

Chadee brings this action alleging Ocwen violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), by failing to respond in a timely or adequate manner to a written Request for Information ("RFI"). On February 11, 2016, Ocwen received the RFI from Chadee's counsel, Korte & Wortman, P.A. ("Korte & Wortman"). Exs. J, K, Doc. 2-1 at 144–49. The RFI states, in pertinent part:

> [T]he borrower is concerned with the manner in which the loan modification application/submission was handled and reviewed. Additionally, the borrower believes that certain fees are being wrongfully assessed with respect to the loan account and demands a full accounting for all fees being charged to the account along with an explanation for why such fees are being charged to the account.

Ex. J, Doc. 2-1 at 144. It goes on to demand seventeen varied items of information. Ex. J, Doc. 2-1 at 144–45.

In a letter dated March 4, 2016, Ocwen responded to the RFI by, in part, explaining that its response was limited to the servicing of Chadee's loan;[1] providing the name, address, and phone number of the owner of the loan;[2] articulating a detailed explanation of the fees and expenses assessed on the loan;[3] relaying its internal requests for additional information responsive to Chadee's letter;[4] and (by separate mailing) forwarding a payment history.[5] Korte & Wortman received the letter and payment history on March 10, 2016. Exs. L, M, Doc. 2-1 at 151–63.

On March 5, 2016, Ocwen sent Korte & Wortman, among other things, a copy of Chadee's mortgage,[6] copies of invoices for broker's price opinions,[7] a copy of Chadee's note,[8] and copies of invoices for property inspections.[9] Korte & Wortman received these documents on March 9, 2016. Ex. N, Doc. 2-2 at 4.

Despite its receipt of this information and documentation, Korte & Wortman prepared a Notice of Error ("NOE") that stated, in part: "[T]his office previously sent a Request for Information on behalf of the borrower regarding the loan. We are unsure as to whether you have

---

[1]     "Section 2605(e) of the Real Estate Settlement Procedures Act (RESPA) requires that Ocwen respond to 'qualified written requests', as defined by that section, regarding 'information relating to the servicing of such loan', 12 U.S.C. § 2605(e)(1)(A). Further, the information we provide in relation to your request is limited only to the servicing of your account and is not required to extend to loan origination." Ex. L, Doc. 2-1 at 152.

[2]     "We are the servicer of the loan, not necessarily the owner of the loan. We are servicing the loan for the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2006-RP2, 60 Livingston Ave EM-MN-WS3D, St. Paul, MN 55107 and phone: (800) 934-6802." Ex. L, Doc. 2-1 at 153.

[3]     Ex. L, Doc. 2-1 at 153–54.

[4]     Ex. L, Doc. 2-1 at 153–54.

[5]     Ex. M, Doc. 2-1 at 158–63, Doc. 2-2 at 1.

[6]     Ex. N, Doc. 2-2 at 5–11.

[7]     Ex. N, Doc. 2-2 at 12–21, 26–27.

[8]     Ex. N, Doc. 2-2 at 22–25.

[9]     Ex. N, Doc. 2-2 at 115–49.

received our client's request." Ex. O, Doc. 2-2 at 151. Ocwen received this NOE on May 16,

2017. [10] Ex. O, Doc. 2-2 at 152–54. Next, Korte & Wortman sent a second NOE that stated, in

part:

> [T]his office previously sent a Request for Information on behalf of
> the borrower regarding the loan and requesting contact information
> for the current owner and/or assignee of the loan. Based on review
> of our records, and in violation of 12 U.S.C. Section 2605(k)(1)(D),
> you have failed to provide all relevant contact information for the
> owner and/or assignee of this loan.

Ex. P, Doc. 2-2 at 156. The second NOE was mailed to Ocwen on August 8, 2016. Ex. P, Doc. 2-

2 at 157. Then, Korte & Wortman sent a third NOE that stated, in part:

> This office previously sent a Request for Information on behalf of
> the borrower regarding the loan. The letter was received by the
> bank/servicer on or around February 11, 2016.
>
> In this request, we asked for:
> > (1) 17 items, please see the copy of the original request
> > attached hereto as Exhibit "A".
>
> Please let this letter serve as a reminder that, to date, you have failed
> to respond to the following:
> > (1) Any of the requested documents in #1-4, 15-17. [11]

---

[10]    It is impossible to say when Korte & Wortman prepared this first NOE because it—like all of
Korte & Wortman's correspondence attached to Chadee's complaint—was both unsigned and undated.
The Court is puzzled by the fact that a firm seemingly so focused on timeliness routinely fails to date its
professional correspondence.

[11]    Items 1–4 and 15–17 requested the following:
"1.    All correspondence from your Company, any subsidiaries or prior servicers for this Loan
following any loss mitigation applications/submissions related to this Loan which were sent to the
borrower from January 10, 2014 to present.
2.    Any and all proof of mailings for the correspondence identified in response to Request #1 above,
including but not limited to: fed ex tracking numbers, certified mail receipts, and/or a correspondence log
showing the date each such correspondence was sent.
3.    All correspondence from your Company, any subsidiaries or prior servicers for this Loan related
to borrowers' rights to appeal denials of a loan modification which were sent to the borrower from
January 10, 2014 to present.
4.    Any and all proof of mailings for the correspondence identified in response to Request #3 above,
including but not limited to: fed ex tracking numbers, certified mail receipts, and/or a correspondence log
showing the date each such correspondence was sent.
15.    Any and all proof(s) of payment(s) for any [broker's price opinions] charged to the account since
January 10, 2014.

> Based on review of our records, and in violation of 12 C.F.R.
> Section 1024.36(d)(2)(i)(B) you have failed to timely provide a
> sufficient written response to the Request.

Ex. Q, Doc. 2-2 at 159. The third NOE was mailed to Ocwen on November 17, 2016. Ex. Q,

Doc. 2-2 at 160.

Chadee sued Ocwen in the Circuit Court of the Thirteenth Judicial Circuit in and for

Hillsborough County, Florida on December 6, 2016. Doc. 1. In his three-count complaint,

Chadee alleged Ocwen violated RESPA and its implementing regulation, 12 C.F.R. § 1024 *et*

*seq.* ("Regulation X"). Specifically, in Count I, Chadee alleged Ocwen failed to acknowledge

receipt of Chadee's RFI within the five-day time period set forth in 12 C.F.R. § 1024.36(c), in

violation of 12 U.S.C. § 2605(k); in Count II, Chadee alleged Ocwen failed to provide the

contact information for the owner of Chadee's mortgage loan within the ten-day time period set

forth in 12 C.F.R. § 1024.36(d)(2)(i)(A), in violation of 12 U.S.C. § 2605(k); and in Count III,

Chadee alleged Ocwen failed to respond adequately to Chadee's RFI as required by 12 C.F.R. §

1024.36(d)(2)(i)(B), in violation of 12 U.S.C. § 2605(k). Docs. 2, 7. For these alleged violations,

Chadee seeks less than $100.00 in actual damages, plus attorneys' fees, in addition to statutory

damages pursuant to 12 U.S.C. § 2605(f) for what he alleges to be Ocwen's "pattern of disregard

to the requirements imposed upon [it] by Federal Reserve Regulation X." Doc. 2 at 11.

Ocwen timely removed the case to this Court on January 3, 2017, Doc. 1, and it now

moves to dismiss.

## II.    Standard of Review

---

16.    All correspondence, not previously provided in response to Requests 1, 3, 5 or 8, from your
Company, any subsidiaries or prior servicers for this Loan which were sent to the borrower from January
10, 2014 to present. If there is no other correspondence in your possession, please state 'None'.
17.    The identity, address and telephone number of the current owner or assignee of this Loan."
Ex. J, Doc. 2-1 at 144–45.

A court considering a motion to dismiss must view the complaint in the light most favorable to the plaintiff. *See Murphy v. FDIC*, 208 F.3d 959, 962 (11th Cir. 2000) (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999)). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a short and plain statement of the claim showing the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Although Rule 8 does not require a claimant to set out in detail the facts upon which he bases his claim, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a complaint must allege sufficient facts, accepted as true, to state a plausible claim for relief. *Id.* If those well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint stops short of showing the plaintiff is entitled to relief. *Id.* at 679. While a court must assume that all of the factual allegations in the complaint are true, that assumption is inapplicable to legal conclusions, *id.* at 678, and a court "may dismiss a complaint on a dispositive issue of law." *Acosta v. Campbell*, 309 F. App'x 315, 318 (11th Cir. 2009) (per curiam).

The standard on a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail on his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *See Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986). The door to discovery will not open for a plaintiff "armed with nothing more than conclusions," *Iqbal*, 556 U.S. at 678–79, and dismissal is proper when "no construction of the factual allegations will support the cause of action." *Marshall Co. Bd. of Educ. v. Marshall Co. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). Furthermore, "courts

may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682) (alteration in original).

### III.    Discussion

Ocwen argues dismissal is appropriate because Chadee has failed to allege actual damages. It specifically contends that it was obliged to respond only to those requests for information that related to the servicing of Chadee's loan, and Chadee had received all of the information he requested that was related to loan servicing well before Korte & Wortman mailed even the first NOE. Consequently, Ocwen asserts, Chadee seeks redress for a violation of a statutory procedural requirement—essentially, timeliness—which, under recent Supreme Court case law, may not result in concrete harm. Ocwen also argues that Chadee's alleged injury is not fairly traceable to Ocwen's conduct because Chadee incurred his alleged damages—less than $100.00 in postage plus attorneys' fees related to the preparation and sending of the three NOEs—well after Ocwen had provided the requested information, and therefore, he did so on his own initiative.

Chadee responds that he does have a concrete, though intangible, injury under RESPA because Ocwen's untimely and inadequate response to the RFI constituted a statutory violation that deprived Chadee of needed information. Relying on the policy considerations underpinning RESPA, Chadee argues "damages borne of having to file a subsequent NOE is sufficient to articulate a damages pleading." Doc. 7 at 5. Chadee does not address Ocwen's argument regarding the adequacy of Ocwen's response (*i.e.*, its obligation to respond only to those requests for information that related to the servicing of Chadee's loan), nor does he confront Ocwen's

6

assertions regarding the timing of the NOEs (*i.e.*, that Chadee incurred all of his alleged damages after Korte & Wortman had already received the information requested in the RFI that related to loan servicing).

### A.    Count III: Adequacy

In Count III, Chadee alleges Ocwen's response to his RFI was inadequate. An RFI must request information "related to the servicing of a loan" to trigger the mortgage loan servicer's obligations under RESPA. *See Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1348–49 (S.D. Fla. 2016). Under RESPA,

> The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). "Information related to loan servicing includes information about the receipt of periodic payments or the amounts of such payments." *Hudgins*, 192 F. Supp. 3d at 1349 (citation and internal quotation marks omitted). Inquiries related to loan creation or modification do not qualify as requests related to the servicing of a loan. *Sirote v. BBVA Compass Bank*, 857 F. Supp. 2d 1213, 1221–22 (N.D. Ala. 2010), *aff'd*, 462 F. App'x 888 (11th Cir. 2012).

Ocwen maintains its substantive response to Chadee's RFI was sufficient. In support, Ocwen refers to the numerous documents attached to Chadee's complaint and argues it was required to respond only to those of Chadee's inquires that related to loan servicing. Ocwen acknowledges Korte & Wortman's contention in the third NOE that Ocwen had failed to respond to the requests for information and documents in items 1–4 and 15–17,[12] but it maintains it was

---

[12] *Supra* n.11.

not required to respond to items 1–4 and 15–16 because those requests did not relate to the servicing of Chadee's loan. Instead, it argues, those requests for information related to loan modification. Doc. 6 at 10–11. Furthermore, with respect to item 17, Ocwen provided information regarding the current owner of Chadee's loan in its March 4, 2016 response to the RFI.

Chadee has failed entirely to respond to this argument for dismissal or, indeed, to explain how the response was in any way inadequate. Although Chadee has made conclusory allegations that Ocwen's response was inadequate, the exhibits attached to Chadee's complaint suggest the opposite. And when allegations in a pleading conflict with the exhibits attached, the exhibits control. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (per curiam) (citations omitted). The Court construes Chadee's failure to present a contrary argument as his abandonment of his claim of inadequacy. Accordingly, the Court grants Ocwen's motion to dismiss as to Count III.

### B.       Counts I and II: Timeliness

In Counts I and II, Chadee alleges Ocwen did not respond to the RFI in a timely manner, as required by Regulation X. Specifically, Chadee alleges Ocwen violated Regulation X—and, by extension, RESPA—by failing to acknowledge his RFI within five days (Count I) and by failing to provide contact information for the owner of Chadee's mortgage loan within ten days (Count II). But the documents attached to Chadee's complaint establish that Ocwen did acknowledge the RFI and provide contact information for the owner of Chadee's mortgage loan, albeit not within the time frames prescribed by Regulation X. Consequently, Counts I and II can be reduced to claims that Ocwen provided adequate acknowledgement and notice in an untimely manner.

Ocwen argues dismissal of Counts I and II is appropriate because the late receipt of this information did not cause Chadee any actual damages. Instead, Chadee's claimed damages were incurred when Korte & Wortman dispatched the NOEs. But the NOEs were sent well after Korte & Wortman had already received the requested information.

Regulation X imposes three deadlines on loan servicers that are relevant to this case. Upon receipt of a borrower's request for information, a loan servicer must (1) within five business days, acknowledge receipt of that request, 12 C.F.R. § 1024.36(c); (2) within ten business days, provide the borrower with the identity, address, and other relevant contact information for the owner or assignee of the mortgage loan, 12 C.F.R. § 1024.36(d); and (3) within thirty business days, conduct a reasonable search for the requested information, providing the borrower with a written notification stating the servicer has determined that the requested information is unavailable to the servicer, providing the basis for the servicer's determination, and providing contact information for further assistance, 12 C.F.R. § 1024.36(d). Aggrieved borrowers may seek actual damages "as a result of" the loan servicer's failure, and "any additional damages . . . in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1).

Chadee has not stated any factual basis for actual damages incurred "as a result of" Ocwen's conduct. Chadee argues "damages borne of *having to file* a subsequent NOE is sufficient to articulate a damages pleading." Doc. 7 at 5 (emphasis added). But he has not established there was ever a need to file the NOEs here. The only actual damages Chadee claims are related to the drafting and mailing of his various NOEs, all of which were prepared and dispatched months after Korte & Wortman had already received Ocwen's substantive response to the RFI. Because Korte & Wortman had already received all of the information Chadee

requested related to servicing before the NOEs were mailed, there was no *need* to mail the NOEs—certainly no need that arose "as a result of" Ocwen's conduct.

Consequently, drawing all inferences in favor of Chadee, it is evident that the expenses incurred in preparing and sending the NOEs were not causally linked to Ocwen's conduct. *See Pimental v. Ocwen Loan Servicing, LLC*, 2016 WL 6678523, at *3 (S.D. Fla. Nov. 8, 2016); *see also Meeks v. Ocwen Loan Servicing, LLC*, __ F. App'x __, 2017 WL 782285, at *2 n.3 (11th Cir. 2017) (per curiam) (affirming in the alternative because the plaintiff "did not suffer any compensable damages from [the loan servicer's] alleged violation" and stating: "[W]e agree with the district court that [the plaintiff's] counsel's NOE appeared to 'falsely question[] the servicer's receipt in order to create a claim for damages.'")

This conclusion is bolstered by the Supreme Court's reasoning in *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540 (2016) *as revised* (May 24, 2016). In *Spokeo*, the Supreme Court addressed the injury-in-fact requirement of Article III standing as it applies to the vindication of statutory rights. The Court explained:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [the plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.* at 1549; *see also Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1003 (11th Cir. 2016) ("[T]he requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation. A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court.") (citing

*Spokeo*, 136 S. Ct. at 1550). Applying that analysis to this case, the Court concludes that Chadee has failed to allege a concrete injury to establish Article III standing and that Counts I and II should be dismissed.[13]

### IV.    Conclusion

Given the foregoing, the Court finds Chadee's allegations of inadequacy are belied by the documents attached to his complaint, and it concludes that his allegations of a bare procedural violation of untimeliness are insufficient to establish a concrete injury—and, by extension, Article III standing. Accordingly, it is ORDERED AND ADJUDGED that Ocwen's Motion to Dismiss (Doc. 6) is **GRANTED**. The Clerk is directed to enter judgment in favor of Ocwen and then to close the case.

**DONE AND ORDERED** at Tampa, Florida, this 17th day of March, 2017.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

---

[13] The Eleventh Circuit recently postulated that, under 12 U.S.C. § 2605(f)(1)(B), "a plaintiff cannot recover ['additional'] pattern-or-practice damages in the absence of actual damages." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 n.4 (11th Cir. 2016). Chadee has not suffered a concrete injury in fact. So, based on the *dicta* from *Renfroe*—in addition to the analysis set forth in *Spokeo*—Chadee cannot assert a claim for statutory damages here.

11